## WILLIAM Z. PARTELLO

### v.

### THE STATE OF ILLINOIS.

*Opinion filed March 20, 1903.*

CONTRACTS—*no recovery after all rights have been relinquished.* When a party being unable to carry out the terms of his contract, gives the other party a written relinquishment of all rights he may have thereunder, he cannot afterwards recover for money paid out by him under such contract.

William Z. Partello claims from the State the sum of $28,000.00.

The claim is in the nature of an action of assumpsit growing out of a written contract made on August 31, 1892, by him with the Board of Managers of the Illinois State Reformatory at Pontiac, Illinois, to furnish all labor and material required to erect and fully complete three buildings, viz: a cell house with attached school and lavatory building, a solitary and medical examination building combined, and a trade school building.

The plans and specifications upon which the contract was let were referred to in and made a part of the contract, and the material was to be furnished and the work done strictly according to the same.

Article II of the contract provided that the material used be of the best quality and the work executed in the most workmanlike manner, both material and work to be to the entire satisfaction of said Board.

Article III provided that the entire work should be fully completed on or before the 1st day of August, A. D. 1893. That if through the fault of the Board of Managers the work was delayed, it also provides that the contractor be allowed one additional day to the time

above stated for each and every day said work was delayed by the fault of the Board of Managers, strikes or other causes over which the contractor had no control.

Also that if the contractor without being so prevented failed to comply with the terms of said contract which relate to the time within which the work was to be completed, then and in that event, he was to forfeit the sum of $25.00 per day for each and every day thereafter until the work was completed; and that such sum be deducted from any money due him and if that amount was not due, then he was to pay the deficiency.

Article IV provided that should the contractor fail to prosecute the work with such diligence as in the judgment of the Board would insure the completion of the work within the time specified in the contract, or fail to comply with any of the terms thereof, and thereby in the judgment of the Board hazard the satisfactory completion of the work, as stipulated, and after giving the contractor ten days notice in writing, and upon his failure to prosecute the work within said ten days, then the Board was authorized and empowered to take possession of the machinery, tools and material of the contractor and supply whatever was necessary and complete the work and deduct the cost thereof from any money due the contractor and if sufficient sum was not due him, then in that event he was to pay the deficiency.

Article V provided that all work exhibited in or provided to be done by the plans and drawings and not mentioned in the specifications or vice versa, be performed as if same were fully mentioned in such, without extra charge.

Article VI relates to alterations by addition or omissions on the work and amount and manner of payment for same.

Article VII provided for the use of labor of inmates of the reformatory on the work and the payment therefor.

Article VIII provided that the Board shall appoint an architect and superintendent to have charge of the work but that the final acceptance thereof shall rest with

the Board, and that the acts of such architect shall be merely advisory.

Article IX provided that the contract price of said buildings complete be $105,384.00. Payments to be made as follows: Ninety per cent of the value of the work executed to the satisfaction of the Board, to be paid in monthly installments as the work progressed, the said value to be ascertained by the architect according to the terms of the specifications, which specifications provide that "such monthly payments shall be based upon the estimated value of the quantity of such work and computed from the contract *unit of value.*"

Ten per cent to be retained until the completion of the entire work and the approval and acceptance thereof by the Board, and in case of non-fulfillment of the contract by the contractor, this amount was to be forfeited, such forfeiture not to relieve him from liability to the Board for any damages sustained by reason of any breach of the contract.

Article X provided that the contractor shall save and keep harmless the Board of Managers from all claims, loss or damage arising from the negligence of the contractor, and to properly protect the work until completed and accepted.

Article XI provided that the contractor shall with two good and sufficient sureties execute a bond to the Board for $52,500.00 for the faithful performance of the contract and that the contract should not be assigned without the written consent of the Board.

The claimant alleges in his statement of claim herein filed:

First: That after the execution of said contract he proceeded under the terms thereof with said work with all due diligence and furnished material necessary to the progress of said work.

Second: That instead of being paid in monthly installments, ninety per cent of the value of the work, labor and material performed and furnished under said con-

tract, he was paid only about forty per cent thereof, and that by reason of not receiving ninety per cent, he was delayed and hindered in the progress of said work.

Third: That on or about the 27th day of April, 1893, without right or authority, under the terms of said contract, the said Board of Managers undertook to cancel the contract and prevent him from proceeding with said work.

Fourth: That at the time said action was taken by said Managers there was due him for extra work allowed by the architect and superintendent of said work the sum of $1,838.00 and a further sum of $15,419.76 for work and material put into the said building.

Fifth: That at the time the said contract was cancelled, there was material left upon the grounds of the said Reformatory at Pontiac, belonging to the claimant, which was afterward appropriated and used in the said building by the said Managers, amounting to the sum of $12,580.00 and for which the claimant has never been paid.

Sixth: That in June, 1893, one George McIntosh, made an offer to said Board of Managers to complete the work covered by the contract of claimant for $89,000.00 and in addition thereto, to pay the claimant the sum due him for work and material then done and furnished under said contract; also to take, use and pay for the material belonging to claimant, and then on the ground at said reformatory, and that at the request of said McIntosh and the said Board of Managers, the claimant consented thereto; and that thereafter on the 8th day of July, A. D. 1893, the contract was let to said McIntosh, who thereupon duly entered into a contract with said Board of Managers to complete the work called for by the contract, made by the claimant. That afterwards without the knowledge or consent of claimant, said Board released said McIntosh from said contract.

In answer to the allegation set out in claimant's claim, the State has filed pleas denying any indebtedness whatever to the plaintiff; also averring that the claimant

voluntarily relinquished to the State in May, 1893, all claims which he might have against the State, under and by virtue of said contract; also setting out that claimant failed to prosecute and the Board of Managers in pursuance of the terms of the contract, terminated his employment and all rights thereunder, and also that claimant's claim was barred by the statute of limitations.

Partello began work on the buildings in August, 1892. It appears from the evidence that a small force of men was employed and the work progressed correspondingly slow. It soon became apparent to the Board that unless better progress was made, the work would not be completed within the time specified in the contract, and that the appropriation to construct those buildings would lapse before their completion, and the same be thereby delayed until further appropriation by the State. That Partello from the beginning was repeatedly urged by members of the Board to exercise such diligence in the prosecution of the work as the contract required.

About April 1, 1893, Partello became financially involved and soon thereafter, the unused material which he then had upon the grounds of the reformatory was seized by his creditors under writs of attachment, executions and replevins and thereupon the prosecution of the work was practically abandoned by him.

Having failed to prosecute the work, as required by contract and for the above reasons having abandoned the same, Partello was notified in writing by the Board on April 6, 1893, that unless within ten days he prosecuted the work in such manner as to comply with the terms of such contract, the same would be cancelled and terminated.

On May 2, 1892, Partello appeared in person at a meeting of the Board which was then being held at Pontiac, and stated that he could not carry out the contract and requested to be relieved of same. He thereupon gave the Board his relinquishment which is

written on the back of the bond attached to the contract and is as follows:

"PONTIAC, ILL., May 2, 1893.

In consideration of the premises I hereby relinquish all rights I may have under this contract and agree that said contract may be transferred to such person or persons as the Board of Managers shall appoint or select.

(Signed.)   WILLIAM Z. PARTELLO."

The Board on June 1, 1893, accepted same by a resolution as follows:

"Be it therefore resolved, and ordered by the Board of Managers of the Illinois State Reformatory that the contract of this Board with said William Z. Partello be, and the same is hereby declared to be cancelled and terminated.

This Board reserving the right to prosecute suit for all damages sustained by the State by the failure of said Partello to fulfill his contract."

In relation to this release and the forfeiture of the contract, the records of the Board show that in December, 1893, the credit to Partello of the sum of $1,449.35 on the books of the reformatory was then disposed of as follows:

"On motion of Manager Ela, the following order was entered in relation to Wm. Z. Partello:

"It appearing on the books of the reformatory that there is a balance standing to the credit of Wm. Z. Partello of $1,449.35, and it also appearing that there is actually due the State from said Partello a large sum of money; much more than the above apparent balance, on account of his failure to fulfill his contract with this Board for the construction of the buildings, the clerk is hereby directed to enter a memoranda of that fact as against said apparent credit balance standing on said books."

Having for the reasons above stated, forfeited his contract and having thus elected to surrender same with full knowledge of all the facts, no reason is perceived why the conditions in such release contained are not

obligatory upon him both in law and in equity.   The language of the release is:

"I hereby release *all rights* I may have in this contract."

It was in writing deliberately executed by the claimant and so accepted by the Board.   And was by all parties concerned intended to be a forfeiture of and a complete bar to any claim which Partello might have under and by virtue of such contract.

This relinquishment considered in connection with the resolution of the Board, in accepting same and declaring the contract terminated, and reserving the right to prosecute suit against the claimant for all damages sustained by the State by reason of his failure to fulfill his contract, the manner in which the Board disposed of the balance appearing to his credit on the books of the Board together with the testimony of a number of credible witnesses, all prove that there was a good and sufficient consideration for this release and that the same is a bar to any claim for work or material then constructed into said buildings.

It is shown by the evidence that at a meeting of the Board held on June 1, 1893, Partello was notified to return the plans and specifications for the buildings.

The records of the Board show that on June 22, 1893, an order was passed to advertise for bids for the construction of the reformatory buildings, and that on July 6th, among others, a bid was received from one George McIntosh to complete two of the three buildings covered by the Partello contract, namely, the cell house and attached school building and a solitary and medical examination building, for $89,000.00.

Afterward on July 8, 1893, the Board awarded to said McIntosh a contract to construct one of the two buildings covered by his bid, namely, the cell-house and attached school building, for the sum of $78,300.00.

Records of the Board also show that said McIntosh afterwards refused to give bond and execute the contract for such work.

It is contended that Partello executed the release in consideration of the contract being made by the Board of Managers with said McIntosh to complete the buildings and that McIntosh was released from his contract by the Board without the consent of Partello and that it was part of the contract with McIntosh, that he, (McIntosh) was to pay Partello, the amount claimed to be due him and that therefore the State is now liable to pay him such claimed balance.

McIntosh in his testimony before this Commission, denies that such arrangement was ever made with or by him and all of the evidence shows clearly that this contention has no foundation in fact but on the contrary, appears to be an after-creation.

Aside from the testimony of claimant, the record in this case is absolutely wanting in any proof that the Board of Managers was at any time a party to any contract by which Partello was to be paid out of any sum that the Board of Managers might pay to any other contractor for the completion of the buildings; besides the release was dated May 2, 1893, and it is matter which appears on the records of the Board, and is not disputed except by testimony of claimant, that the only bid from said McIntosh for the construction of these buildings was received by the Board on July 6, 1893, more than two months after the release was made and the contract surrendered.

Not only is this contention of claimant wholly unreasonable but it was impossible for it to be as testified to by him. The bid of McIntosh did not cover all of the buildings included in Partello's contract and again, it appears that Partello took his contract at a very low figure, his bid being about $35,000.00 below any other proposal made for the work.

Is it within reason and common experience that Mr. McIntosh or any other intelligent contractor, would pay a bonus for being allowed to assume such an obligation regardless of the great advance in labor and material, as shown by the evidence in this case?

It also appears that the bid of McIntosh was made in competition with other bids and was much the lower bid. These bids were in writing, and it is shown by the testimony of the bidders and of the members of the Board who have testified herein, that the bid included no terms or conditions except those contained in the bids themselves, and it appears from an inspection of said bids that no reference is made therein to Partello or his contract.

It is claimed by Partello that his monthly estimates of the architect were too low, and that instead of being ninety per cent of the value of the work, they were not to exceed 41 per cent thereof.

The evidence is that the architect, according to the contract made the monthly estimates upon the work done and that the same (less the ten per cent which was to be retained till the work was completed) was paid in monthly installments as in the contract provided, and that no objections as to the correctness of these estimates were made by him at any time to the Board.

These estimates were made by the architect during the progress of the work under the terms of the contract and were so received and acted upon by the Board. If the estimates were not correct it was the duty of Partello at that time to make known his objection to the Board and have the matter then adjusted. Not having done so, he is not in a position to complain after he had voluntarily surrendered his contract and released the State from all his rights under the same. This rule certainly applies in like controversies between two individuals and no reason is perceived why it should not apply here.

It will be observed that Partello contends that he should have received monthly, 90 per cent of the *value* of the work done. This is not what the contract provided. The language of the specifications is that such estimates shall be "based upon the estimated value of the quantity of such work and computed from the contract

unit of value." The "contract unit of value" was $105,-884.00.

The proof is that owing to the rapid advance in the price of labor and material and the limited time in which the appropriation would lapse after Partello surrendered his contract, the Board was unable to re-let the work within the appropriation then at its command, and that it therefore decided to purchase material and employ labor necessary to complete certain two of the three buildings covered by the Partello contract. And in the work, the Board used the labor of the inmates of the reformatory as far as practicable and added nothing to the plans to increase the cost of the buildings, and yet under economical management, the actual cost of these two buildings to the State, was between $30,000 and $35,000 in excess of the price specified in the contract with Partello. So that if the $15,-419.76 herein claimed for labor and material was put in buildings, be added, there would be an excess of $46,-000 to $51,000 not including the value of the labor done by the inmates of the reformatory, which is not included in the above excess of $30,000 to $35,000. Giving Partello credit for the sum of $15,419.76, there still remains an excess of more than $35,000 due from him to the State by reason of failure to carry out the terms of his contract.

The undisputed proof is that after the buildings were completed the Board of Managers sought to recover these damages from Partello and his bondsmen, and that upon investigation it was found that both Partello and his said sureties were wholly insolvent and that for this reason the effort to collect damages on the bond was abandoned.

$12,580.24 is claimed for material which claimant alleges he left upon the grounds of the reformatory, taken possession of and afterwards used by the Board in completing the buildings.

The evidence shows that about the time of the signing of the release, Partello had a considerable quantity

of unused material, such as brick, stone, cement, iron, lime, etc., on the reformatory grounds. The claimant testifies that this was taken possession of and used by the Board, without payment therefor. That Partello has a claim against the State for material so used is wholly without foundation in fact.

The proof taken from the records and the testimony of reliable witnesses, on this question conclusively show that all the material belonging to Partello upon the reformatory grounds at the time he surrendered his contract, was seized by his creditors under writs of attachment and writs of execution, or taken possession of under writs of replevin procured by firms which had sold him such material. T. W. Coe, then sheriff of Livingston county, testified before this Commission that during the months of April and May, A. D. 1893, he, in his capacity as sheriff levied upon and sold all of this material under various writs of attachment and executions obtained against Partello by his creditors (excepting however such parts thereof as was replevined by persons claiming to be the owners thereof.)

The officer's return on one of these writs of attachment is as follows:

STATE OF ILLINOIS,   ⎱ ss.
LIVINGSTON COUNTY. ⎰

By virtue of the within writ of attachment I have levied upon the following described property, to-wit: One pile of pressed bricks supposed to be about 40,000, north of the north end of the new building now being erected on the grounds of the Illinois State Reformatory. Also a lot of cut stone sills and caps on said grounds, also a lot of iron columns near pile of pressed brick described as above, also a lot of pressed brick in south shed near building, also a lot of cement in north shed near east family building and west of the new building being erected on grounds aforesaid. This cement levied upon subject to levy by W. H. Bentley, constable.

This 20th day of April, A. D. 1893.

(Signed.)    T. W. COE, *Sheriff.*

I have also levied upon a part of car-load of cut-stone windows, caps and sills on car on side track of Chicago & Alton R. R. and near said reformatory grounds, and on C. & A. car No. 1877. I have also summoned the National Bank of Pontiac as garnishee, by delivering a true copy thereof to J. E. Morrow, president of said bank, at the direction of plaintiff.

This 21st day of April, A. D. 1893.

STATE OF ILLINOIS, ⎫ ss.
LIVINGSTON COUNTY. ⎰

I have duly served the within by summoning the within named defendant, William Z. Partello, as I am therein commanded.

This 25th day of April, A. D. 1893.

T. W. COE, *Sheriff.*

The court records of Livingston county produced in evidence herein further show that the material seized under and by virtue of these various writs was afterwards sold under same and the proceeds derived therefrom were prorated among the creditors, the amount received not being sufficient to satisfy the claims in full. The proof further shows that none of this material was used in the building, except such as was purchased from the legal owners thereof, and paid for by the Board, after the same had been taken from Partello.

The evidence also shows that some of the material for which claimant is now demanding pay was never used in the buildings, but was replevined and taken away by the owners.

The first intimation of any claim by Partello was in August, 1893, when the Board received a letter which is as follows:

"CHICAGO, ILL., Aug. 5, 1893.

*To the Board of Commissioners of the Reformatory at Pontiac.*

Gentlemen: There is about nine thousand dollars ($9,000.00) due me on account of money paid out by me in excess of what I have received in the work on the

reformatory at Pontiac, during the time I held the contract for the building work.

Legal counsel has advised me to make my demand for this money due me, and I hereby demand prompt settlement of my claim.

Very respectfully,

(Signed.)   W. Z. PARTELLO."

Later in the same year his attorney, Mr. Crafts, presented claim for him to the Board for $15,223.00 and in 1897 he had introduced for him in the House of Representatives, a bill for an act to appropriate to him $18,-632.21.

Afterwards in 1898 he filed with this Commission a claim presumably sworn to by claimant, as required by the statutes for $15,419.76, and in 1901, he procured another bill to be introduced in the House for $28,000.00.

From these unexplainable differences in the amounts claimed at different times, it is plain that there has always been in the mind of claimant a vague uncertainty as to his claim against the State.

Much evidence has been produced before this Commission in this case and without entering into what would be a tedious review of all the testimony bearing upon claimant's right to recover against the State, and aside from the statute of limitations, a careful examination of the evidence has satisfied us that after waiving all technicalities and by applying to the facts the most liberal principles of equity, it clearly appears that there is no merit in this claim against the State of Illinois for any sum whatever.

The claim is therefore rejected.